## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **Michelle Gibson and Deborah Meem** | : | Case No. 1:14-cv-347 |
| C/O Gerhardstein & Branch, LPA | : | |
| 432 Walnut Street, Suite 400 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | **Judge** |
| And | : | |
| | : | |
| **Heather Apple and Mary K. Koehler** | : | **VERIFIED COMPLAINT FOR** |
| C/O Gerhardstein & Branch, LPA | : | **TEMPORARY RESTRAINING** |
| 432 Walnut Street, Suite 400 | : | **ORDER AND DECLARATORY** |
| Cincinnati, Ohio 45202, | : | **AND INJUNCTIVE RELIEF** |
| | : | |
| And | : | |
| | : | |
| **Ronald Kastner Beck and Dave Beck** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 432 Walnut Street, Suite 400 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| And | : | |
| | : | |
| **Andrew Hickman and Ethan Fletcher** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 432 Walnut Street, Suite 400 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| And | : | |
| | : | |
| **Gary Goodman and Karl Rece, Jr.** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 432 Walnut Street, Suite 400 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| And | : | |
| | : | |
| **Rhonda Craig and Kendra Dukes,** | : | |
| C/O Gerhardstein & Branch, LPA | : | |
| 432 Walnut Street, Suite 400 | : | |
| Cincinnati, Ohio 45202, | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |

| | |
|---|---|
| vs. | : |
| | : |
| **Lance Himes** | : |
| 246 N. High Street | : |
| Columbus, OH 43215 | : |
| In his official capacity as the Director of | : |
| the Ohio Department of Health | : |
| | : |
| and | : |
| | : |
| **James Cissell** | : |
| Hamilton County Probate Court | : |
| 230 East Ninth Street | : |
| Cincinnati, OH 45202 | : |
| In his official capacity as Common Pleas | : |
| Court Judge, Probate Division, | : |
| | : |
| **Defendants.** | : |

## I. PRELIMINARY STATEMENT

1. This civil rights case seeks to secure for same-sex couples across Ohio the right to marry on an equal basis with opposite-sex couples. Plaintiffs include six same-sex couples who want to get married in their home state of Ohio. They are in love, but Ohio law denies them the right to get married and enjoy marriage's many benefits and responsibilities. In Ohio, a marriage may only be entered into by one man and one woman. OH Const. Art. XV, §11; Ohio Rev. Code § 3101.01(A) (collectively, the "marriage ban"). Any attempt by same-sex couples to enter into an Ohio marriage is treated as void ab initio and not recognized by the state. *Id*. at (C)(1). Plaintiffs challenge this unequal treatment of same-sex and opposite-sex couples as unconstitutional.

2. This Court recently held that Ohio's marriage recognition bans violate the equal protection and substantive due process rights of same-sex couples legally married in other states who seek recognition of their marriages in Ohio. *Henry v. Himes*, No. 1:14-CV-129, 2014 WL

2

1418395 (S.D. Ohio Apr. 14, 2014); *Obergefell v. Wymyslo*, No. 1:13-CV-501, 2013 WL 6726688 *1 (S.D. Ohio Dec. 23, 2013).  Likewise, since the Supreme Court struck down the federal Defense of Marriage Act (DOMA) in *United States v. Windsor*, 133 S.Ct. 2675 (June 26, 2013), federal courts in Indiana, Michigan, Tennessee, Texas, Illinois, Kentucky, Virginia, Oklahoma, and Utah have required their states to recognize and/or allow the marriages of same-sex couples.[1]  Federal courts are not alone in their interpretation of the Constitution.  Eight attorney generals have refused to defend of their marriage bans citing the changing legal landscape.[2]  In fact, since *Windsor*, not a single defendant of marriage discrimination has successfully argued that the government has a compelling interest or rational basis for refusing to recognize or allow marriages between same-sex couples.  A consensus is finally emerging: the Constitution protects the right of consenting adults to love whoever they want.  It is time for Ohio to do the same.

3. Plaintiffs bring this action under 42 U.S.C. § 1983, challenging Article XV, § 11 of the Constitution of Ohio and the provisions of Ohio Rev. Code Ch. 3101 that exclude same-

---

[1] *See, e.g.*, *Baskin v. Bogan*, No 1:14-CV-355-RLY-TAB, 2014 WL 1568884 (S.D. **Ind**. Apr. 18, 2014) (temporarily enjoining Indiana's marriage recognition ban); *DeBoer v. Snyder*, No. 12-CV-10285, 2014 WL 1100794, at *17 (E.D. **Mich**. Mar. 21, 2014) (permanently enjoining Michigan anti-celebration provisions on equal protection grounds); *Tanco v. Haslam*, No. 3:13-cv-01159, 2014 WL 997525, at *6, *9 (M.D. **Tenn**. Mar. 14, 2014) (preliminarily enjoining enforcement of Tennessee anti-recognition provisions, on equal protection grounds); *De Leon v. Perry*, No. SA-13-CA-00982-OLG, 2014 WL 715741, at *1, *24 (W.D. **Tex**. Feb. 26, 2014) (preliminarily enjoining Texas anti-celebration and anti-recognition provisions on equal protection and due process grounds); *Lee v. Orr*, No. 13-CV-8719, 2014 WL 683680 (N.D. **Ill**. Feb. 21, 2014) (declaring Illinois celebration ban unconstitutional on equal protection grounds); *Bourke v. Beshear*, No. 3:13-CV-750-H, 2014 WL 556729, at *1 (W.D. **Ky**. Feb. 12, 2014) (declaring Kentucky's anti-recognition provisions unconstitutional on equal protection grounds); *Bostic v. Rainey*, No. 2:13cv395, 2014 WL 561978, at *23 (E.D. **Va**. Feb. 13, 2014) (finding Virginia's anti-celebration and anti-recognition laws unconstitutional on due process and equal protection grounds, and preliminarily enjoining enforcement); *Bishop v. United States ex rel. Holder*, No. 04-CV-848-TCK-TLW, 2014 WL 116013, at *33-34 (N.D. **Okla**. Jan. 14, 2014) (permanently enjoining Oklahoma's anti-celebration provisions on equal protection grounds); *Kitchen v. Herbert*, No. 2:13-cv-217, 2013 WL 6697874, at *30 (D. **Utah** Dec. 20, 2013) (permanently enjoining Utah anti-celebration provisions on due process and equal protection grounds).
[2] Emma Margolin, *Kentucky attorney general won't appeal gay marriage ruling*, MSNBC March 4, 2012, available at http://www.msnbc.com/msnbc/the-bluest-red-state ("Conway is the eighth attorney general in the country to abandon such laws in the face of mounting legal victories for marriage equality.").

sex couples from marriage. Plaintiffs seek declaratory and injunctive relief for violations of the Equal Protection and Due Process Clauses of the U.S. Constitution.

## II. JURISDICTION AND VENUE

4. Jurisdiction over the federal claims is conferred on this Court by 28 U.S.C. §1331 and §1343(3) and (4).

5. Venue is proper under 28 U.S.C. §1391(b)(1).

## III. PARTIES

6. Plaintiffs Michelle Gibson and Deborah Meem are a same-sex couple living in Hamilton County, Ohio. They bring this action individually.

7. Plaintiffs Heather Apple and Mary K. Koehler are a same-sex couple living in Hamilton County, Ohio. They bring this action individually.

8. Plaintiffs Ronny Kastner Beck and Dave Beck are a same-sex couple living in Hamilton County, Ohio. They bring this action individually.

9. Plaintiffs Andrew Hickman and Ethan Fletcher are a same-sex couple living in Hamilton County, Ohio. They bring this action individually.

10. Plaintiffs Gary Goodman and Karl Rece Jr. are a same-sex couple living in Clermont County, Ohio. They expect to solemnize their marriage in Hamilton County, Ohio. They bring this action individually.

11. Plaintiffs Rhonda Craig and Kendra Dukes are a same-sex couple living in Hamilton County, Ohio. They bring this action individually.

12. Defendant Lance Himes is the Interim Director of the Ohio Department of Health. In that capacity he is responsible for overseeing the administration of all statutes and regulations that relate to the State of Ohio's system for recording vital statistics, including but not limited to

the recording of marriage certificates. Defendant Himes is sued in his official capacity for injunctive relief only.

13. Defendant James Cissell is the judge of the Hamilton County, Court of Common Pleas, Probate Division. He is responsible for accepting marriage license applications, issuing marriage licenses and recording marriage licenses on a form prescribed by the Ohio Department of Health. Defendant Cissell is sued in his official capacity for injunctive relief only.

## IV. FACTS

**A.** **Michelle Gibson and Deborah Meem**

14. Michelle and Deborah began dating in 1995 and have had a loving and fulfilling relationship ever since. They are both professors at the University of Cincinnati, where they met.

15. They would like to be married in Ohio, where they live, as do their family and friends.

16. Michelle and Deborah have two grandchildren and they believe it is particularly important for their grandchildren to see their relationship treated equally with opposite-sex couples.

17. In October, 2008, Michelle was diagnosed with multiple sclerosis. In 2011, she began using a wheelchair. For the past two years, she has used a wheel chair full time. She has recently had some health issues that required her to spend time in a rehabilitation facility. Although she has returned home, it is very likely that at some time in the future, she may need 24 hour home-care or even need to live in an extended care facility.

18. Because of Michelle's illness, it is important that their relationship be legally recognized very soon. They have drafted documents so that Deborah can care for Michelle and make health care and financial decisions for her if she is unable, but they worry that those

documents may not be honored. Given the wide range of health care staff and others who must refer to these wordy, technical documents, their fear is very reasonable.

19. Deborah and Michelle need the protections that a state-recognized marriage would provide.

**B.    Heather Apple and Mary K. Koehler**

20. Heather Apple and Mary K. Koehler ("Mary Kay") began dating in 2004, soon fell in love, and moved in together in 2006.

21. They discussed raising children together but wanted to get married first, so they had a commitment ceremony in 2008. It was the best they could do because Ohio bans same-sex marriage.

22. In 2009, they began the fertility process, and in 2010 Heather gave birth to their first daughter. Mary Kay gave birth to their second daughter in 2012.

23. Heather and Mary Kay would like to be legally married. They want their family to have the same legal and financial stability that opposite-sex married couples enjoy. This is especially important because they are raising children together.

**C.    Ronald Kastner Beck and David Beck**

24. Ronald ("Ronny") and David ("Dave") met at a fitness gym, and began dating in March 2001.

25. In 2006, Ronny and Dave were on vacation in Hawaii with Dave's parents and while admiring an amazing view, they were overwhelmed by the beautiful setting and the beauty of their relationship. They had previously talked about adopting children and how it was important that they be 100% committed to each other beforehand. At that overlook, they made the commitment to marry.

26. They knew that Ohio would not allow them to legally wed, so they planned a commitment ceremony. Ronny and Dave were both raised as Catholics. To prepare for the lifelong commitment they were making, they participated in a three month marriage counseling process called Pre-Cana.

27. On June 9, 2006, Ronny and Dave exchanged vows before God, their family, and their friends. Their priest was not allowed to officiate because of the Catholic Church's position on homosexuality, but he attended as a guest.

28. They soon began foster-to-adopt certification and in December, 2007, a six month old little boy was placed in their care as an emergency placement after his birth mother tried to commit suicide. Because only one of them was allowed by Ohio law to be his adoptive parent, Ronny became his legal father through adoption. When he was almost three years old, their son was diagnosed with autism. He required extensive early intervention therapy that included 40 hours a week of tutoring for over two years. He has transitioned to full day kindergarten. He can speak and read but he will require an educational intervention plan throughout his education.

29. In March, 2009, another little boy was placed in Ronny and Dave's care on an emergency basis. He came to them at six months old, directly from the hospital where he had undergone a double hernia surgery. His birth mother was homeless and unable to care for him.

30. Three or four months after they began fostering their second son and before the adoption process began, Ronny and Dave learned that their son would have multiple developmental delays. Ronny and Dave decided that they were just like any other parents who do not know beforehand the types of challenges their birth child may face. You love them anyway and you just figure it out. Giving him back was not an option because he was their son now. Dave became his adoptive parent.

31. Although Ronny and Dave have drafted extensive paperwork to try to protect their family, they are always fearful of what would happen if one of them died. They worry about being separated from one of their children or having their sons separated from each other. They worry about their sons' medical insurance and the disposition of the deceased's social security benefits. These and many other uncertainties would be resolved if Ronny and Dave were legally married just like an opposite-sex couple in their situation.

32. Ronny has stopped working to stay at home and care for their sons with special needs. Ronny lost medical insurance coverage because Dave's plan does not cover domestic partners, only spouses. They have had to purchase an individual health insurance plan for Ronny.

33. Ronny and Dave would like to marry in Ohio and have that marriage legally recognized.

**D.** **Andrew Hickam and Ethan Fletcher**

34. Andrew and Ethan are both 29 years old and they are in love.

35. They first met when they lived across the street from each other in Over-the-Rhine. They would say hello when they bumped into each other walking around the neighborhood. In December, 2011, Andrew invited Ethan to dinner.

36. They soon discovered they have a lot in common. They are close to their families, treasure their friends, and love music. Ethan sang with the Cincinnati Men's Chorus, and Andrew subsequently joined.

37. In the spring of 2013, Andrew and Ethan moved in together.

38. On New Year's Eve 2013, Ethan told Andrew that he had planned a house party at the home of one of their friends. Before they left for the party, Ethan got down on one knee

8

and asked Andrew to marry him. Of course Andrew said yes and they exchanged rings that Ethan had bought for both of them. The "house party" was really a "happy engagement party," because their friends were in on the surprise.

39. Andrew and Ethan would like to marry soon. Both Andrew's mother and Ethan's grandmother are elderly. They all live close to each other and it is very important to Andrew and Ethan that they attend the wedding. Because of their age, it would be a significant hardship, if not impossible, for them to travel a great distance. If Andrew and Ethan could be married in Hamilton County, Andrew's mother and Ethan's grandmother could attend.

40. It is important to Andrew and Ethan that they get married and not just have a commitment ceremony. They want a marriage that is on equal terms with opposite-sex couples.

**E. Gary Goodman and Karl Rece Jr.**

41. Gary and Karl met in 2001 at King's Island Pride Night. They fell in love immediately.

42. Gary has twin boys and they soon embraced Karl as a father.

43. In 2011, on their ten-year anniversary they went back to Kings Island for Pride Night and Gary proposed to Karl in front of many friends and family.

44. Soon after their engagement, they began planning their wedding. They have created a guest list of 350 people. They have a date, theme, colors, and décor. They have even bought wedding favors for their guests. The only thing they don't have is the right to be married at home, in Ohio.

45. Gary and Karl's family and friends love and support them and want to attend their wedding, but will only be able to do that if they are married in Ohio. Gary and Karl's friends and family are not wealthy and cannot afford to travel to a destination wedding. If they get

married in Ohio, they expect to have over 300 guests. If they are married out of state, they would be lucky to have 10 guests attend. Gary and Karl want to celebrate their marriage at home, in front of all their family and friends.

**F.      Rhonda Craig and Kendra Dukes**

46.     Rhonda is 44 years old and has lived in Cincinnati nearly her entire life.

47.     Rhonda and Kendra met in 1997, started dating in 2003, and moved in together in 2004.

48.     Rhonda and Kendra always wanted children. Together they now have two children, a son and a daughter.

49.     Kendra, Rhonda, and their children have been discussing the importance of marriage. To them, marriage is a public expression of how they feel about their relationship and their family.

50.     Kendra and Rhonda are African-American, and feel that marriage for same-sex couples is an issue comparable to voting rights. It is not that you have to vote or get married, but they should have the same right to vote and marry that other citizens have.

51.     Kendra and Rhonda would like to get married. They believe it would be an important lesson for their children that you should not be judged by your color or by who you love.

**G.      Ohio Prohibits Marriage of Same-sex Couples**

52.     Ohio law excludes lesbian and gay couples from marriage. Article XV Section 11 of the Ohio Constitution states that "only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions." Ohio Rev. Code § 3101.01(A) states that "a marriage may only be entered into by one man and one woman."

10

Section 3101.01(C)(1) declares that "any marriage between persons of the same-sex is against the strong public policy of this state." Further, "any marriage between persons of the same-sex shall have no legal force or effect in this state and, if attempted to be entered into in this state, is void ab initio and shall not be recognized by this state." *Id*. These provisions of Ohio law that individually and collectively exclude same-sex couples from marriage are referred to herein as the "marriage ban."

53. The only marriages that may occur in Ohio are marriages between a man and a woman properly solemnized and licensed in compliance with Chapter 3101 of the Ohio Revised Code. Ohio Rev. Code § 3105.12(B)(1).

54. A couple seeking to get married in Hamilton County, Ohio must apply to Defendant Cissell as the Hamilton County Probate Judge for a marriage license. Ohio Rev. Code § 3101.05(A). If the court is satisfied that no legal impediment exists to the marriage then the court shall grant the marriage license. *Id*. That license will be recorded by Defendant Himes and recognized throughout the state and beyond.

55. Ohio's marriage ban creates a legal impediment to marriage for same-sex couples and prevents probate courts from issuing marriage licenses to same-sex couples.

56. In fact it is a crime for the Plaintiffs to even apply for a marriage license together. The application requires the marriage applicants to swear under oath that "there is no legal impediment to their marriage." Plaintiffs, knowing the prohibitions in Ohio law for same-sex couples to marry, cannot swear to this statement. If any were to, they would be subject to criminal prosecution for the crime of falsification under O.R.C. § 2921.13 and 3101.99. O.R.C. § 3101.05 (B).

57. Once a couple is issued a license, their marriage must be solemnized by a person authorized under Ohio Rev. Code § 3101.08. That person then transmits a certificate of the solemnized marriage to the probate court of the county that issued the marriage license, where it is numbered and recorded. Ohio Rev. Code § 3101.13.

58. Plaintiffs cannot enter into a legally sanctioned civil marriage in Ohio without a marriage license. Common law marriages are not recognized in Ohio. Ohio Rev. Code § 3105.12(B)(1).

59. If the Plaintiffs in this case were to apply for marriage licenses they would all be denied by defendants because of the marriage ban.

60. If the Plaintiffs in this case were to apply for marriage licenses they would face a risk of criminal prosecution pursuant to O.R.C. § 3101.99 and 3101.05(B).

61. All the Plaintiffs want to marry in Ohio. Some of the Plaintiffs are engaged; one couple has been engaged for three years. They have an urgent need to affirm their commitment to one another before their children, their family, their friends, and their community.

**H.** **Need for Preliminary Injunction**

62. Plaintiffs will suffer irreparable harm if this Court does not grant preliminary relief.

63. Plaintiffs' economic injuries are substantial and compound daily. Plaintiffs are denied local, state, and federal tax benefits available to opposite-sex couples. Plaintiffs also do not have access to employment benefits offered to spouses by public and most private employers. By denying Plaintiffs their constitutional right to marry, the State deprives them of their entitlement to these benefits.

64. The Plaintiffs' family security is tenuous. The State does not offer them a safety net - they are denied access to entitlement programs (welfare benefits, food stamps, Medicaid, etc.). In the event of serious injury they may be barred by hospital staff and/or relatives from their partners' bedsides due to lack of legally-recognized relationship status. If they are injured through the acts of another, the uninjured partner would be denied any loss of consortium by the courts. A surviving partner could not bring a wrongful death claim, nor could she take through intestacy or by electing against her partner's estate. In Ohio, like anywhere else, life can end in an instant, and after decades of love and commitment a surviving partner can be left with nothing.

65. There are thousands of benefits extended under federal and state law that are denied to these plaintiffs because they cannot marry but available to opposite-sex couples who are permitted to marry.  This is unfair, unjust and a complete denial of the dignity to which same-sex couples are entitled.

66. The status of marriage has unique social significance and recognition.  Without access to the familiar language and label of marriage, Plaintiffs are unable instantly or adequately to communicate to others the depth or permanence of their commitment, or to obtain respect for that commitment as others do simply by invoking their married status.

67. Plaintiffs' exclusion from marriage frustrates their life goals and dreams, their ability to fulfill their personal values, their happiness and self-determination.  For Plaintiffs, marriage is a deeply held value.  They want to be married in Ohio, their home state.

68. Without access to marriage these Plaintiffs and their children are treated as second class citizens. These Plaintiffs are denied the dignity readily extended to opposite-sex couples who are able to marry in Ohio.

69. Plaintiffs have a high likelihood of success on the merits. The constitutional issues raised in this case have been decided in favor of same-sex couples by all courts hearing such issues since *Windsor*.

70. The "freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men." *Loving v. Virginia*, 388 U.S. 1, 12 (1967).

71. This Court should take judicial notice of the factual record in the *Obergefell* case, including the expert declarations filed by the parties.

72. There is no adequate remedy at law. The Plaintiffs are suffering irreparable harm. There is no harm to the Defendants by granting a declaratory judgment and an injunction prohibiting Defendants' enforcement of the marriage ban. The public interest is clearly served by this Court allowing Plaintiffs to get married. In fact, the State would benefit from placing the responsibilities of marriage upon the Plaintiffs who would be required to financially support each other and their shared minor children while married and in the event of a divorce. Only prompt action by this Federal Court ordering declaratory and injunctive relief will serve the public interest.

## V. CLAIM FOR RELIEF

### Violation of 42 U.S.C. § 1983 – United States Constitution

73. Ohio Rev. Code § 3101.01 and OH Const. Art. XV, §11 violate fundamental liberties that are protected by the Freedom of Association Clause of the First Amendment, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment on their face. Through their enforcement and duty to comply with Ohio Rev. Code § 3101.01 and Art. XV, §11 of the Ohio Constitution, Defendants, acting under the color of law, are violating rights

secured to Plaintiffs by the First and Fourteenth Amendments to the United States Constitution including the rights to freedom of association, due process of law, and the right to equal protection under the law. Specifically, due to the marriage ban Defendants cannot issue or record marriage certificates to Plaintiffs and extend to them all the rights and responsibilities of legal marriage.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court:

A. Issue a declaratory judgment that the statutory and Ohio Constitutional provisions at issue in this case on their face violate the constitutional rights of the Plaintiffs;

B. Issue a preliminary and permanent injunction against Defendants and all those acting in concert requiring that they accept marriage license applications from same-sex couples, issue marriage licenses to same-sex couples, and record the certified abstract of marriage for same-sex married couples;

C. Award to Plaintiffs reasonable costs, expenses, and attorney fees;

D. Award such other and further relief as this Court shall deem just and reasonable.

Respectfully submitted,

| | |
|---|---|
| Lisa T. Meeks  #0062074 | /s/Jennifer L. Branch |
| NEWMAN & MEEKS Co., LPA | Jennifer L. Branch #0038893 |
| 215 E. Ninth Street, Suite 650 | *Trial Attorney for Plaintiffs* |
| Cincinnati, OH  45202 | Alphonse A. Gerhardstein # 0032053 |
| Phone:  513.639.7000 | Jacklyn Gonzales Martin #0090242 |
| Fax:  513.639.7011 | GERHARDSTEIN & BRANCH Co. LPA |
| lisameeks@newman-meeks.com | 432 Walnut Street, Suite 400 |
| | Cincinnati, Ohio 45202 |
| | Phone: 513.621.9100 Ext. 13 |
| | Fax: 513. 345-5543 |
| | jbranch@gbfirm.com |
| | agerhardstein@gbfirm.com |
| | jgmartin@gbfirm.com |
| | *Attorneys for Plaintiffs* |